Mar. 22, <br>1876.                    FIFIELD *v.* SWETT.

*Changing the lines of school-districts—Notice—School-house tax.*

On September 14, 1872, the citizens of a school-district voted a tax for the purpose of building a school-house. October 26 of the same year the lines of the district were changed so as to include the dwelling-house and other real estate of the plaintiff. Said tax was not assessed by the selectmen until April, 1873, and was then assessed upon the invoice of 1873, which included the plaintiff and his property. *Held*, that the tax was legally assessed againtst the plaintiff.

It seems that the signing of a notice for a hearing upon a petition for changing the lines of a school-district, under General Statutes, ch. 78, sec. 5, is a ministerial act, and the fact, that one of the three selectmen signing such notice is disqualified by interest to act upon the petition, does not invalidate the notice.

FROM MERRIMACK CIRCUIT COURT.

This action was sent to a referee, who reported in favor of the defendants, and, at the request of the plaintiff, reported his conclusions of fact and of law as follows:

The action is trespass for assault and imprisonment. The plea is the general issue, and a brief statement justifying the defendant's act as lawful on the ground that it was committed by their agent, the tax-collector of Andover, in the execution of his duty with regard to the collection of a tax.

The defendant was arrested on July 28, 1874, by the legal tax-collector of Andover, for refusal to pay a school-house tax. He was compelled to go to Concord with the collector, where he paid the tax, being $11.24, interest thereon 56 cents, costs $5.22, making in all $17.22. He also paid his car fare from Concord to Andover, and lost one day's time. The territory, which in 1872 was school-district No. 6, in Andover, was once a part of school-district No. 4, but many years ago it was set off and made into a separate district called No. 6. The tax, for non-payment of which the plaintiff was arrested, was voted for

the purpose of building a school-house, by the voters of No. 4, at a legal meeting held in No. 4, September 14. 1872, and within ten days thereafter the selectmen were properly notified of said vote ; but they did not assess a tax for the purpose of raising the money thus voted until April, 1873, assessing it then upon the invoice of 1873. On September 14, 1872, the plaintiff resided where he has ever since resided, and still resides, in the territory which on that date was included in district No. 6. On September 30, 1872, one Davis and others addressed their petition to the school committee and the selectmen of Andover, asking them to change the lines of school-districts Nos. 6, 4, 7, and 8, so that all that part of No. 6 lying southerly and westerly of Blackwater river, and all that part of No. 6 which is not included in the foregoing clause, and which lies westerly of the brook which runs from Elbow pond to said Blackwater river, may be annexed to and become a part of No. 4. A hearing upon this petition was appointed for October 26, 1872, and an order of notice thereof duly issued October 8, 1872, signed by E. G. Emery, school committee, G. J. Swett, E. G. Emery, and S. M. Cilley, selectmen. Mr. Swett, being a resident of one of the interested districts, and thus disqualifying him from sitting at the hearing of said petition, his colleagues, on October 7, 1872, appointed John F. Emery selectman for the purpose of this hearing, but said Emery did not take the oath of office until October 12, 1872. He was a person duly qualified, and who had previously held the office of selectman in Andover. The notice aforesaid was duly served and returned, and a meeting was held on October 26, 1872, at which meeting, as appears by the record thereof, the said school-district No. 6 did appear by its prudential committee and clerk, Franklin H. Pettingill.

B. F. Pettingill, Thomas R. Harrison, Jr., Samuel O. Colby, Silas C. Fifield, Charles Sanders, and Daniel Davis, who were all, in addition to the above, members of said school-district No. 6, appeared in person, and were heard. This record was admitted, subject to the plaintiff's exception. The prayer of the petition was granted, and that portion of No. 6 in which the plaintiff resided was ordered to be annexed and to become a part of No. 4. At this meeting it appeared, by evidence outside the record aforesaid, that all the voters in that portion of No. 6 thus annexed (including the plaintiff, and also the said Franklin H. Pettingill, clerk and prudential committee of said district) were present from the beginning to the end. E. G. Emery, who was both school committee and a selectman, called the meeting to order, and presided. The petition and the order of notice, including the names signed thereto, the return thereof, &c., were all distinctly read to the meeting by its chairman. No counsel appeared for any interested party, though Mr. Shirley was present and participated in the discussion. Several witnesses were examined, the chairman stating that opportunity was offered to any person to ask questions and to make remarks. No suggestion was made to the meeting, or to any of its officers, or in their hearing, of any illegality or informality in the matter of notice, or any subsequent proceeding. No objection was made

to John F. Emery sitting and acting in the place of Swett, or that he was disqualified by reason of not having signed the notice. No objection was made to E. G. Emery acting in the two capacities of school committee and selectman. Franklin H. Pettingill, clerk and prudential committee of No. 6, was present with the district records. Notice had been legally served upon him as an officer of the district. He had read this notice and the names attached to it, and had shown it to his father (the plaintiff in another suit of this character now pending against these defendants), who also had read it.

Franklin H. Pettingill was not impowered by any formal vote of No. 6 to appear for the district; but he was present, and I find, upon a balance of the evidence (which was conflicting upon this point), that, in reply to questions put to him at the meeting, he declared that he was present in the capacity of clerk and prudential committee of the district. Upon this point John F. Emery testified as follows, subject to the plaintiff's exception: Franklin H. Pettingill appeared there with the records of the district, and was inquired of as to whether he appeared as an officer of the district to oppose the division. He said he appeared as an agent or an officer of the district. He read from his book in answer to questions propounded by the board. Various parties of those opposed to the division made speeches and cross-examined witnesses. All the proceedings of all officers or other parties in relation to the whole subject-matter, which are not hereinbefore particularly set forth, were regular and unobjectionable. My conclusions of law are,—(1) The notice for the meeting of October 26 was legal and sufficient. It was signed by a majority of the selectmen not disqualified, and was not made invalid by being signed also by one who was disqualified to act upon the hearing. (2) The offices of selectmen and school-committee are not incompatible. (3) If there was any defect or irregularity in either of the foregoing respects, it was waived by the plaintiff. (4) The prudential committee was not authorized virtute officii to appear for district No. 6; consequently his appearance there was no waiver by the district. But (5) the plaintiff cannot object for the district, nor take any advantages open only and peculiarly to the district alone. (6) It was lawful for the selectmen to assess a tax in April, 1873, upon the vote of September 14, 1872. (7) Upon these facts this action cannot be maintained.

If the court should be of opinion that my rulings of law are wrong, and that this action may be maintained, I find that the plaintiff's damages are $24.27.

The questions of law arising on the foregoing report were transferred to this court for determination by STANLEY, J.

*Barnard*, for the plaintiff.

*Shirley*, for the defendants.

LADD, J. If signing the notice for the hearing of Oct. 26, 1872, had

been a judicial act, participation in that act by one who was disqualified by interest would probably invalidate it. But I think it was not an act of that description—*Ashuelot Railroad* v. *Elliot*, Cheshire Aug. T., 1874—and that the notice was well enough ;—besides, I see no reason to doubt that, if there had been a defect in the notice, it was cured by the appearance. *School District* v. *Carr*, 55 N. H. 452.

As to the objection that the tax was not seasonably assessed by the selectmen, I think the case does not show any ground upon which that objection can be sustained. It is argued that the word *seasonably* means during the political year within which the tax it voted. If the legislature had meant that, it is not easy to understand why they did not say it. The word, in its commonly received signification, certainly means no such thing. So far from fixing a precise and definite period within which the act must be done, the word naturally implies an exercise of judgment and discretion as to the time when it shall be done, having due regard to all the circumstances of the case ; that is, it is to be done " in proper time." I think this objection must be overruled.

The other question in the case is one of greater difficulty and importance, but I have reached the conclusion that the tax was legally assessed. If a person should voluntarily move into a school-district, . carrying his personal estate with him, after a vote had been passed to raise money for a legitimate purpose, but before the tax was assessed, and a new invoice had in the meantime been made, either with reference to that particular tax or upon the taking of the annual inventory of the town, there would be no doubt but such new comer would be liable to such school-district tax, although he was not an inhabitant of the district at the time of the vote. Now, the law provides a mode whereby the lines of a school-district may be changed so that persons and property not before situated in a given district may be involuntarily brought into it. If it had been thought just that a different rule should apply in the case of persons and property thus involuntarily brought within the territorial limits of a district from what applies in case of voluntary removals, it was easy for the legislature to make such provisions on the subject as might be thought just. In the absence of any such provisions, I see no good reason why the same rule should not apply in both cases.

So far as regards the equity of the thing, there is no substantial difference between this case and the case of one annexed against his will to a school-district which is already owing debts contracted before the annexation ; and that this may be done, I suppose no one doubts.

It is to be presumed that the tribunal to whom is entrusted the power of changing the lines of school-districts will examine carefully into all the equities of each case ; that the private rights and interests to be affected by their action, as well as the public convenience and welfare, will receive due consideration and regard ;—and what it is to be presumed beforehand they will do, it is to be presumed afterwards they have done. In making the change they did here, it is to be presumed they did not act without knowledge of the fact that the plaintiff would

be made liable to taxation for all legitimate purposes in the district to which they annexed him; that he would be compelled to pay all taxes that might thereafter be assessed against him in the same way as though he had moved into the district voluntarily; and it is to be presumed that, in view of all this, they were of opinion that, while the public good required the annexation, neither the legal nor political rights of the plaintiff would be invaded by their decision. I am of opinion that there should be judgment on the report for the defendants.

CUSHING, C. J., and SMITH, J., concurred.

*Exceptions overruled.*